Good afternoon, your honor. My name is Robert Sprednick. I'm the attorney for Leigh Ann Archuleta I would like to try to reserve three minutes for rebuttal, but I know that's a Gonna be a difficult request to What's key in this particular case and we're here on a summary judgment that we say should not have been granted had the Supreme Court judge and so this is the second time this case has been before an appellate And this is a very straightforward application of the US Supreme Court decision in Crawford v. Metro government of Nashville in that It's uncontested. Ms. Archuleta never used magic words This was sexual harassment, but she did say in response to questioning That she felt that Harley Lappin, the chief corrections officer for the company, a very very high-ranking Executive, when he grabbed her hand and kind of held it for an uncomfortably long period of time She thought it was odd and she felt Uncomfortable. That was her report and under the standard of this court enunciated previously and under Crawford v. Metro government that is enough to To meet the standard for protected opposition activity What's key here is to pay attention to kind of two timelines And the first is the incident happened July 31st 2013 the prison tour August 22nd 2013 Harley Lappin writes an email Where he makes all sorts of accusations against Ms. Archuleta in that She's going around the prison saying that she was molested and That she's going to use this incident in for her protection later on which is very bizarre statement Considering that Ms. Archuleta had a perfect record clean record of 20 years So why this sudden thought that she's going to need this for protection is It's very bizarre August 23rd this email gets forwarded to the outside attorney who's conducting the sexual harassment So Ms. Archuleta's comments about it being odd and making her uncomfortable were said in the context of a sexual harassment Investigation and she did not ask for it and she gets interviewed by an attorney who's telling her that You know about that. There's an accusation that she said she was molested. I mean if you're saying the incident was caught on tape, but if you because this was a prison and Everything pretty much that happens within the four walls of the prison is going to be captured by surveillance video for the most part So it was captured on video and she desperately does not want To be labeled as somebody who's accusing the chief corrections officer One of the highest ranking executives in the company of molesting her and so she denies that she was molested But she makes it clear in the interview that she thought it was odd It made her uncomfortable and at that point based upon the law of this case that this court Previously enunciated that is enough to state protected opposition So there should not have even been an issue of whether she stated protective opposite whether she's engaged in protected opposition but instead the district court described her behavior as the antithesis of Was legitimate opposition, so She again like said did not use the magic words But she really very clearly was engaged in protected opposition and within she's interviewing on September 3rd continuing with this timeline And on September 9th, she receives the first disciplinary write-up in her career something that was foreshadowed By Harley Lappin's email of August 22nd that we knew that that was coming at this point and so on September 9 the Retaliation campaign against Leanne Archuleta for just merely saying That she thought Harley Lappin's actions were odd and made her uncomfortable causing a sexual harassment investigation to be launched suddenly She's a target and so the second timeline comes up because she has engaged in protected opposition according to Crawford and the standards of this court There's an incident on February 6 or 7 it was late at night So it's kind of unclear calendar wise which date it was, but it was You know late evening early morning February 6 February 7 where there's an incident involving a release of an inmate out of segregation segregation in the prison context and I know Judge Pregerson has worked with the California Department of Corrections So he's probably more familiar with inmate segregation issues than I am But this was an issue of releasing an inmate from Segregation and the inmate was not released from segregation and apparently there's an issue of whether you know what Leanne Archuleta's involvement in quote endangering the The life and safety of two corrections officers that were ordered to tell the inmate the truth about why? He was being released from segregation now the evidence in the record is Leanne Archuleta merely passed along to the corrections officers the directive from her associate warden Assistant warden. I'm sorry Michael Dickens who she reported to to tell the truth She didn't get into what the truth was. She said tell the truth to the inmate because that's one of the core principles of Corrections Corporation now known as CoreCivic that Truthfulness is supposed to be a Followed she tells the inmate passing on a directive. No addition. There's no evidence that she somehow added to that and She gets fired March suspended on March 31st and then fired on on June 4th What's kind of interesting is she was accused of endangering the life of two corrections officers yet She continued to work for eight weeks Which is strong evidence that this was just a pretext that they decided this was the best that they had To get rid of the person who got Harley Lappin in trouble the chief corrections officer in trouble and so It clearly has evidence has put in the record that this was pretextual Can I ask you just one question please The district court granted summary judgment on the first element of a prime of her prime afraid face a case Protected activity correct, that's all the district court decided correct It didn't go beyond that because it said she was right on she was engaged in the antithesis of protected activity Correct court never got to know if we if we were to agree with you We would send this back. We should send this case back to the district court to complete the analysis You could do that we would ask that it Be reversed and remanded for trial because we think that the evidence because you've got authority to review this de novo That I think it's pretty clear that we've put evidence in the record of pretext That's all that we need to do is put evidence in the record of the pretext And so and you know if we've made out the prima facie case, it's pretty clear According to the prior decision and according to Crawford she was engaged in protected opposition. She suffered an adverse job action. That's undisputed She was fired on on June 4th 2014 It's undisputed that the employer offered up the legitimate non-discriminatory reason It's this incident of February 6 February 7th that they said was the basis of the termination And then we get the pretext analysis, and we think because You are to review this de novo that we've put in the record The sufficient evidence of the pretext so we can just have it reversed and remanded for trial. We don't need to further delay the proceedings with With further adjudication, but there was no assessment beyond that You want it should we hear from the from the? Yes as a procedural matter counsel Is there a distinction because in the prior decision We were determining whether or not a claim had been Plausibly stated in here on appeal. We're here on summary judgment Does that make a difference in terms of whether or not we are bound by the prior decision of a panel in this? particular instance yes because Evidence was put in the record to back up what was said in the pleadings that she Testified under oath. It's it's in the record that in the course of this sexual harassment Investigation of September 3rd She felt that Lappin's actions were odd, and it made her feel uncomfortable And she you know it's clear. She didn't use the term molested, but it was odd and uncomfortable so therefore She put the evidence in the record to back up what this court has already said was protected opposition Thank You Honor Judge Pais, I think you were following up on a question I was gonna ask if you have anything further or we can just hear from the I'll say All right, that's good all right Counsel for Corrections Corporations Corporate corporations corporate Corrections Corporation of America Thank You Your Honor Um First I'd like to briefly a judge judge address judge Rawlinson's point. She's absolutely correct You're Katie Branson. Yes, Your Honor. Thank you Judge Rawlinson had asked opposing counsel if there was perhaps a difference between the panel's ruling at the motion for summary or motion to dismiss stage that Claim had been sufficiently pled to withstand it all Twombly and be permitted to proceed Versus how the court should view the evidence once it's uncovered in discovery three to four years later And absolutely it's a different assessment the court was simply saying the complaint says that she believed mr. Lappin's Behavior was odd and uncomfortable and that she spoke with an investigator for CCA about that and the court found that sufficient to establish a pleading of a prima facie case for protected activity now with considerably problematic is that this Archuleta And this is er 182 to 183 is her sworn statement to the investigator on September 3rd 2013 and no less than six times does she say that she had quote I have no problems with my interactions with mr. Lappin if I felt it was inappropriate I would have filed a written report. I Understanding the reporting process it is insane that somebody reported this event as somehow Isn't that all explainable with analogy to? What you always see and in domestic violence cases where people are afraid? When you've worked at a place for 20 years, and they're now afraid That there might be some consequence because I understand that after she made the report the company itself conducted an investigation so by then it was on the radar and She had already received I believe Some indication that she had received a critical performance evaluation at the time Thank you your honor, I will address both points that you am I correct I asked you a question am I correct? so so therefore You know when a primary purpose of the laws to protect victims when they retract something later on we still have to be mindful of The context and all of that can be subject To I suppose cross-examination concerning her credibility and trial but I failed to see how it impacts on the opposition component of the analysis First your honor she did not ever retract this statement, so this was entered September 3rd 2013 she never retracted it even questioned about it in deposition She agreed that this was her statement, and this is the way she felt the second I'm not suggesting that she retracted it. I'm giving you an explanation for why she wouldn't have retracted Except she never made that argument and tell this appellate brief saying I was scared for my job and therefore said this She never disavowed this statement throughout the entire discovery Why is that such an you know unusual thing to happen for all she knows she's? For all she knows there are other you know I don't know retirement consequences benefit consequences other issues so I Guess I'm just questioning the the value of her subsequent statements So I agree. I think the subsequent statements are not have no value. I think this value the value is Er 182 Where she submitted it in response to the investigation Saying at no time did I feel that this was in any way inappropriate and actually says she felt it was insane that someone reported it Also, miss our two-letter argues that she told the investigator was odd and uncomfortable again in this statement this sworn statement She does not say odd and uncomfortable Anywhere I combed through it, so I'm still trying to figure out where in the record Other than her complaint and a self-serving affidavit Submitted in response to a motion for summary judgment What how she can change the statement that she actually gave to the investigator and make it fit her narrative in addition? This statement is completely consistent with the Crawford courts indication that this is not oppositional behavior And in fact I have a quote from the Crawford Court Opposition for purposes of protected activity is to resist or antagonize to contend against to confront resist withstand and that's at sites to page 274 and again at 276 defining what oppositional behavior is and Reading this statement verbatim. It is absolutely consistent with the debt what the district court said the antithesis of opposite Oppositional behavior she wrote this statement on her own she testified she went back to why did she ever why did she report it then? She did not report it. She did not report it She and she even testified that she did not report it in her deposition She never reported this behavior Warden Collins had a concern because miss Archuleta had printed out a picture of mr. How she was gonna write a book about all of the things she's seen at CCA she was laughing Although misconstrued in the briefing as molested in the typical contest Context of the word which is a very problematic word understand, but the company did an investigation. They had a lawyer do an investigation absolutely, so that That seems inconsistent with your characterization of this being a big zero The reason that they did that was because miss Archuleta kept laughing and joking and talking about how this was gonna go in her Memoirs so what Warden Collins did is out of an abundance of caution and to simply close the loop on this issue And ensure there was no issue She told her supervisor or asked that this third-party investigation be conducted that was she went above and beyond Under the circumstances because miss Archuleta's joking behavior about this consistent with statements authenticated statements from miss Latoya Douglas and Warden Collins that she was laughing and thought it was a huge joke and they just wanted aren't those questions a fact Respectfully your honor with in the totality of this and with this statement I don't think so. I nothing will remains to go to the jury and I did want to address also You had mentioned a timing issue What's also absent from the briefing from by miss Archuleta is the fact that the audit in terms of the PRA a violation? That occurred in miss Archuleta's department was completed before the the ring the What's been referred to as the ring incident where mr. Lapton held her hand and looked at her ring and made a comment about it It was completed before that time and she was interviewed on September 3rd 2013 the discipline issued August 31st It was sitting on a desk being signed because it gets issued and then saw and then reviewed and then signed It was sitting on a desk to be signed before it could be issued to her But there's a clear problem with the nexus between What's got what? Miss Archuleta claims happened and with the timing if the audit was completed and the discipline issued not handed to her but issued and signed before the ring incident even occurred and certainly before she Interviewed on September 3rd, how could it have been in retaliation and this she was eventually fired wasn't she? Correct and I actually thank you your honor that's exactly where I was going because with respect to that issue when she instructed her subordinates to tell the truth about the fact that they had expressed concerns about the safety for an inmate that she had already Greenlighted to be moved out of segregation when she told them that these two subordinates who complain to their supervisors and their higher-ups about her Instructed instruction, which regardless of what she speculates they testify and Or we have admissible Statements from them saying that they feared for their safety to if they pulled this inmate That it was their responsibility that he wasn't moved but setting all that aside They have testified under oath sworn statements that they had no idea about the ring incident And the third-party investigator who conducted the investigation and obtained witness Witness statements from 15 individuals as part of this safety violation by Miss Archuleta and Mr. Dickens She also submitted a sworn declaration She had no idea about the ring incident when she gave her recommendation concerning Miss Archuleta's misconduct and endangering the safety of her of her subordinates and on top of that of the 15 individuals who were interviewed as best as we can tell from the record only a few of them actually knew about the ring incident and that was Gordon Collins and Miss Archuleta herself so it's even if this court were to determine protective activity occurred, which it is highly unlikely it did under the Crawford status for what oppositional behavior consists of but the timing is simply off and the knowledge of the individuals involved is off there's no evidence that the third-party investigator knew about the ring incident and certainly the evidence suggests to the contrary that February 2014 incident that anybody with who was conducting the investigation or was involved in it or had made the complaint about their own safety knew about it completely to the contrary and I would point out also Mr. Harland Sergeant Harland who had made the complaint about Miss Archuleta's directive to him and Mr. Dickens' directive to him specifically explained why he felt that his safety was in danger and he authenticated and he said he told him and this is Harland ERP he told him that he needed to tell Smith that he was not getting out of segregation because of Harland and Donlan and what they had said about him and the Nortenos Harland was quote, kind of in shock he noted that typically after the weekly SHU reviews the detainees are told that the committee has made a decision. Harland does not have the power or authority to make the decision to try We lost you Miss Branson Miss Branson Miss Branson In the last year In response Miss Branson We lost you there for about 30 seconds Okay Thank you your honor I have one Can I just interrupt you right there I just have one question I wanted to ask you similar to what I asked your opposition council If we were to disagree with you and what the district court did on the first element of the prima facie case Yes your honor What should we do You should determine that there is no causation. You should determine that for us now. It doesn't make sense that this case has drug on so long despite Miss Archuleta disavowing throughout the entirety of the case as early as the investigation that she was ever subject to sexual harassment and that she ever had a problem with any of the interactions which although characterized as grasping her hand and fondling which is extremely overblown she says was a six second incident where he simply looked at her ring and he couldn't even remember at least at the time of the statement This is a retaliation claim it's not a discrimination claim Correct You're correct your honor but the person engaging in the activity it must be oppositional activity in order to be protected activity It has to be reasonable belief I think Correct so if she says verbatim that she does not believe this was sexual harassment and her sworn statement on page two of the statement she specifically says in no way did she think this was sexual harassment and also she says it wasn't inappropriate it's insane anybody reported it as inappropriate it didn't make it wasn't weird it wasn't strange it was weird that she was having a discussion about it all of that is completely pulling back from oppositional behavior and therefore not protected activity but there's also no causation because the timing and the knowledge of the of the PREA discipline is the timing lack of timing and lack of knowledge because it was issued Did you understand the district court's ruling saying that there was no oppositional activity or simply that it as the district court said her subsequent actions undermined her initial complaint I understood the district court judges ruling to be that she did not engage in oppositional activity at any time during the entire investigation into the Ring incident Well what did the district court mean by undermined her subsequent affidavit or subsequent statements Well I believe she meant that on the September 3rd 2013 sworn statement that Ms. Archuleta presented where she completely disavowed any misconduct by Mr. Lappin or that she had any problem with the conduct whatsoever I believe that what the court intended was that her was completely belied by the evidence in the record of her own sworn statement where she said it was no big deal Does an opposition activity also encompass like answering the questions of the investigator that came out to interview her If it's not engaged in opposition then no and let me tell you why I believe that and why I believe Crawford supports that. Crawford even specifically says in dicta when they're an exception where you're answering questions and it wouldn't constitute oppositional behavior they said if the person being interviewed is talking about a supervisor making racist remarks and then comments that those remarks were hilarious that would potentially undermine that individual's claim that they were engaged in oppositional protected activity if they are also saying well those offensive remarks were hilarious to me and I would say that's consistent with Ms. Archuleta's behavior she didn't say it was hilarious but she said she didn't have a problem with it and she thought it was insane that anybody brought it up he was just looking at her ring Okay let's hear if we have some rebuttal time left Thank you Your Honor I have tremendous respect for Ms. Branson but I do need to correct a horrible mistake that she had made in her oral argument she's referring to ER 182 and 183 she at least a dozen times called it a sworn statement it is not a sworn statement it is not a statement made under oath there's not it's not notarized there's nothing in here to show that it's a sworn statement it's just something she desperately was trying to save her job with when she was told that she was accusing Harley Lapidum of molesting her in her deposition they were never asked her whether the statements in here are true they only asked her is this your statement is this your signature there was no inquiry into whether those statements are true or not what was said under oath what is said as sworn testimony unlike just this statement the sworn testimony is that it was odd and it made her uncomfortable the most interesting factual dispute here is actually within defendants own testimony in that you've got warden Collins on the one hand saying she never saw any sexual harassment but on the other hand saying Leanne Archuleta was going around the prison saying she was molested by Harley Lapidum clearly they thought that she was stating opposition now we say it wasn't that she was going around saying she was molested but that's the mindset of this employer that Leanne Archuleta was saying that she had been molested and that is serious opposition if that's to that so their own inconsistencies on whether she was molested or was it sexual harassment that's something for the jury to decide and Judge Pragerson made some very good points about drawing the correct inferences as to why somebody would be desperately pleading when confronted with the idea that she was accusing a high level executive of molesting her why somebody would desperately try to downplay it and save their job but it was already too late Harley Lapidum had written his email on August 22nd which kind of makes the timeline we were discussing kind of interesting where they say well it was written on August 30th but not given to her until the 9th after the interview well August 30th means it was still written after Harley Lapidum sent his email and after Harley Lapidum's email was sent to Robert Horton the outside attorney so clearly Harley Lapidum and the warden were treating Leanne Archuleta as a problem child at the time that this write up supposedly was written on August 30th but we've got no evidence that it was correctly dated Warden Collins signed it on the 9th Leanne Archuleta said she got it on the 9th it's from the 9th that's the evidence in the record and then you know the other thing on the issue of pretext I want to real quickly visit where she talks about two statements well one of the statements from Michael Donlan doesn't even accuse Leanne Archuleta of having any contact with him of saying anything to him so the Donlan statement is meaningless because it's got nothing to do with what Leanne Archuleta did the Harlan statement uses a lot of lawyer ease with inter alia and that but he never says Leanne Archuleta told me so that's not enough to be undisputed evidence there and I miss Branson says well it's just six seconds okay let me shake your hand if I hold that handshake one second two second three a second four a second five a second six a second that feels odd doesn't it that feels very uncomfortable so the fact that it's a mere six seconds when somebody's holding your hand that's gonna make it feel odd and that's gonna feel uncomfortable so six seconds is a long time to hold a handshake and the other kind of thing I'll mention real briefly with regard to this statement that the court used an unsworn statement just is reminded of kind of a story I heard about it and I'm not equating a corrections corporation to the Soviet Union but Joseph Stalin gives a speech in 1937 and the crowd stands up and applauds because it's Stalin you have to applaud and the applause goes on for five minutes ten minutes twelve thirteen fourteen and everybody's still wildly applauding and they're about ready to pass out finally one gentleman the manager of a local paper factory sits down he is then arrested by the KGD that night and sent to the Gulag for ten years okay is it a defense of Stalin to say well you know it wasn't because of his sitting down he was applauding for fifteen minutes well you know he wasn't applauding good enough for that thing so and much like this she tries to look like the good apparatchik but she still let it go that she felt it odd and uncomfortable okay with that comment you're right on the time button so with that we thank you and the matter is submitted at this time thanks to both council thank you your honors that ends our session for today
judges: Paez, Rawlinson, Pregerson